### THEADORE THOMPSON V. STATE

No. 29,107. October 30, 1957.
Appellant's Motion for Rehearing Overruled
February 5, 1958.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) March 5, 1958.

*L. W. Westerlage,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen, Homer G. Montgomery, A. D. Bowie,* Assistants District Attor-

ney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, death.

Prosecutrix, a 38-year old housewife and mother of four children, while returning on foot from a visit with relatives on the night in question, was forced into an automobile by two men, one of whom put his hand over her mouth and the other put something hard against the back of her neck and threatened to kill her if she screamed, while a third man drove across a viaduct in the city of Dallas and down into the river bottom. At one time when prosecutrix did scream, one of her assailants hit her in the head and said "if she don't f--- we will kill her," while another said "yes, we are going to kill her anyhow." After they reached the river bottom the three men pulled the prosecutrix out of the automobile, hit her with their fists, threatened her with tire tools, disrobed her, lay her on the ground, and forced her to submit to an act of intercourse with each of them in turn. After this, two of them forced prosecutrix to commit an act of sodomy upon them, and one of them inserted his privates into her rectum.

Following this, they took her money and left her in the river bottom, from which prosecutrix found her way to the home of Mrs. Poke, where she called the police. She identified the appellant as being the first to have intercourse with her, the first to place his penis in her mouth and then in her rectum.

Prosecutrix was carried by the police to the hospital, where male sperm was found in her privates and her bruises and abrasions were examined.

Three or four days after the rape, prosecutrix, while returnin from a visit to the doctor, saw the appellant enter a cafe, followed him, and as soon as she was sure of his identity called the police, and the appellant was arrested. Prosecutrix later identified the two other men who had assaulted her.

Mrs. Poke, the officers who responded to prosecutrix' call and the doctor who examined her corroborated her testimony.

Appellant and his witnesses testified to an alibi for him, but their testimony was by the jury rejected.

We find the evidence sufficient to support the conviction and shall discuss the contentions advanced by able counsel in his brief and argument.

Bill of Exception No. 1 recites that the case against the appellant and two co-indictees was set for October 15 and each filed a motion for severance praying that the others be tried first, that the court set the order of trial which would have placed one of the appellant's co-indictees on trial prior to appellant, and that the three cases were reset for November 12. It further recites that on November 12 the court changed the order of trial and called the appellant's case first, that the appellant prepared a motion for continuance claiming that appellant was unprepared, that the court informed him that the motion would be overruled but that if the appellant would withdraw the same the court would grant a 24-hour postponement, which was done.

Viewed in the light most favorable to the appellant, we have construed the introduction to the court's qualifications of the bill as an exception thereto by the appellant. In view of this construction, we will consider the bill but will not consider the court's qualification. Since we conclude that the bill as submitted does not reflect error, it is not necessary to consider the bystanders' bill or the controverting affidavits.

It should be noted in the beginning that, according to the bill, no motion for continuance was ever filed. It should be further noted that after the expiration of the 24-hour postponement no further request for postponement or continuance was made and that, so far as this bill or the record reflects, the appellant was then prepared and ready for trial. So, then, we have a bill which complains of a change in the order of trial but makes no claim that the court overruled any prayer for delay. If the appellant was not prepared for trial when his case was again called on November 13, he should have made such fact known to the trial court, secured a ruling on his request for a continuance or postponement, and, if adverse, brought the same to this court for review. This, he has not done in the case at bar. The recitation in the bill that "the 24-hour recess offered the only opportunity available for investigation before trial" is refuted by the earlier recitations that appellant's counsel had been appointed on October 15.

We find no error reflected in the bill.

Bill of exception No. 2 complains of the asking of leading

questions and that, following the witness' answer, the prosecutor would repeat such answer. The court's qualification of the bill reflects that two objections were made to questions which the appellant contended were leading, that such objections were sustained, and that no objections were made on the grounds that the prosecutor repeated the answers of the witness. No ruling of the court is therefore presented for review.

Bill of exception No. 3 complains of the cross-examination of the appellant. As qualified by the court, it reflects that a question was asked, an objection was interposed, the state's counsel made a comment which indicated that he thought the appellant was lying, and the court without any objection or request from the appellant instructed the jury "to disregard all sidebar remarks." Since the appellant did not see fit to object, no error is reflected by this portion of the bill. The next portion of the bill complains of the asking of this question: "The fact that you are able to give us a story of what happened and where you were on Friday did not make up an alibi?" The objection to this question was sustained, and the jury was instructed to "disregard the part about the alibi." The bill further reflects that no objection was interposed to the asking of the third question set forth therein. We are at a loss to determine how the appellant could have been injured by the asking of the question above quoted, especially in view of the prompt ruling of the court.

Bill of Exception No. 4 complains of certain questions relating to acts of sodomy which took place at the same time as the rape in question. Recently, in Hale v. State, 164 Texas Crim. Rep. 482, 300 S.W. 2d 75, we said:

"Next it is contended that the testimony of Dr. Marsh as to the condition of the prosecutrix' rectum was not admissible because the indictment in this case was for assault with intent to rape and not sodomy.

"In Sims v. State, 156 Texas Cr. Rep. 218, 240 S.W. 2d 297, 301, a rape case, we held admissible evidence that the accused shot the injured female after he had raped her. We said:

" 'It has so many times been held that all of the facts and circumstances surrounding the commission of the offense are admissible as circumstances, not only of guilt but of the intent and nature of the crime that the jury may consider same not only on the question of guilt, but in determining the punishment to be

meted out therefor. Surely citation of authorities on this subject is not necessary, but we refer particularly to Myers v. State, 105 Texas Cr. R. 426, 289 S.W. 49; Grimmett v. State, 22 Texas App. 36, 2 S.W. 631; Grace v. State, 90 Texas Cr. R. 329, 234 S.W. 541; and Smith v. State, 80 Texas Cr. R. 82, 188 S.W. 933.' "

Bill of exception No. 5 complains of the following cross-examination of appellant's witness Walker:

"Q. You heard about it three days after he was arrested or three days after he raped this woman? A. Three days after he raped her, I guess.

"Q. Three days after he raped her, I guess—does that recall this Friday night to your mind?

\*  \*  \*  \*

"Q. You heard all the particulars about what time he raped this woman—

"MR. PHILLIPS: Note our objection, that is for the jury; it is prejudicial.

"THE COURT: I sustain the objection."

We cannot bring ourselves to agree that the above questions invaded the province of the jury, as appellant contends, and find no error reflected by the bill.

Bill of exception No. 6 sets forth certain argument of the prosecutor and presents the only serious question in the case. We must first determine if it has been established that the argument set forth therein was in fact made. When the bill was submitted to the trial court, he qualified the same by stating that he refused to certify that the argument was made and that the argument was not taken down. The appellant excepted to the qualifications, and the court filed his own bill. Appellant then filed a bystanders' bill, which merely stated that the recitations in the bill were correct, and the state filed controverting affidavits. Among these controverting affidavits were those of two of the affiants to the bystanders' bill in which they swear that their affidavits were not taken at the time they signed the bystanders' bill, that they did not read the bill of exception before they signed the bystanders' bill, and that they signed the same only because they were told that it would help the appel-

lant, and that they could not swear that the recitations in the bill were true or false.

Following this, we find an affidavit of one Lutesha Ansley, who stated that she was a neighbor of the two affiants mentioned above, that two men from the district attorney's office came to the home of the two affiants, and when the two affiants stated that they did not want to talk about the matter the two men stated that there were ways of making them talk and carried them away. There are other recitations in the affidavit about matters that Ansley could not have known except by hearsay, if at all.

This is followed by an affidavit sworn to by the assistant district attorney, a detective, *and the two affiants mentioned above,* in which they describe their visits to the affiants' home, their conversations with them, and the making of the controverting affidavits mentioned above, which all parties state were freely made.

In Palmer v. State, 157 Texas Cr. Rep. 96, 246 S.W. 2d 893, we concluded that, in a case such as the one at bar, our task was to decide the issue raised from the affidavits.

We recapitulate. The bill recites certain argument. It does not recite the objections or tell when the objections were made. The bystanders' bill, if it meets the requirements of one, merely recites that the affiants were present and are fully cognizant of the matters set forth in the bill. The four controverting affidavits are as follows:

Two affiants swore that they heard the prosecutor's argument and that the argument set forth in this bill was not made. They further swear that the appellant made only one objection during the course of the argument, which was overruled, and it was to other and different argument than that set forth in this bill.

Two affiants, who had signed the bystanders' bill, swore that they signed the bystanders' bill without reading it and because they were told that their doing so would help the appellant.

Lutesha Ansley swore to some things which she stated occurred in her presence and to other things which did not and which were clearly conclusions on her part.

Finally, the two parties who went to see the two affiants *plus the two affiants themselves* swore that they had made the controverting affidavits freely.

We have discussed the affidavits fully because of the penalty involved, but have definitely concluded that it has not been shown to the satisfaction of the court that the argument set forth in the bill was actually made.

Findings no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Judge.

We have again carefully considered the record in the light of each of appellant's contentions and remain convinced that the case was properly disposed of originally.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.