LEE ARNWINE v. THE STATE.

No. 3241. Decided November 15, 1905.

**1.—Murder—Charge of Court—Manslaughter.**

If in a murder case, there be evidence, which however inconclusive, tends to prove facts from which the jury may deduce a finding of manslaughter, it is incumbent on the court to give the law of manslaughter in charge to the jury. See facts in opinion which necessitated a charge on manslaughter.

**2.—Same—Charge of Court—Self-Defense.**

See opinion for charge on self-defense which is held to be sufficient on the facts in evidence.

Appeal from the District Court of Cherokee. Tried below before Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Johnson & Edwards* and *Willson & Watkins,* for appellant.—On question of manslaughter: McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 id., 536; Miles v. State, 18 id., 156; Bonner v. State, 29 id., 223; Swain v. State, 86 S. W. Rep., 335; Williams v. State, 15 Texas Crim. App., 617.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—On an indictment charging appellant with the murder of Leslie Lattimore, he was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for a term of fifty years; hence this appeal.

No exceptions were reserved to the rejection or admission of testimony, and the only questions that need be considered are those raised by exceptions to the charge of the court and in the motion for new trial. The court instructed the jury fully on murder in the first and second degree, and self-defense, but omitted to charge on manslaughter. Appellant assigns as error, and bases his assignment both on the bill of exceptions to the action of the court failing to charge on the subject of manslaughter, and also the exception thereto in the motion for new trial. The evidence shows that a grudge or ill-feeling existed between appellant and Leslie Lattimore, but there was none between appellant and Clyde Lattimore. On February 21, 1905, appellant returned from Jacksonville, passing by the house of deceased, Leslie Lattimore. As he approached the house, Leslie and his brother, Clyde, were harnessing a pair of horses to a buggy. He rode on, and in a short time these parties passed him, and when they approached a gate, which led into a field owned by deceased's father, Clyde, the younger

brother, got out of the buggy and opened the gate: the buggy in the mean time turning from the main road towards the gate, the gate being close to the traveled road. Appellant again approached them and here the homicide occurred. The State's theory, supported by evidence is, that appellant began cursing and abusing Leslie Lattimore, and pulled his pistol, shot Leslie down, and then turned his pistol on Clyde, and mortally wounded him. After emptying his pistol, he loaded again, and discharged six more shots at said parties. As stated, the State's theory presents a case of murder without any mitigating circumstances. Appellant himself testified, and he relates that as he approached the buggy, which was turned partially across the road, facing the gate, he undertook to ride around the rear of the buggy, between that and a tree, and as he rode past the side of the buggy to get to its rear, deceased Leslie caught hold of the collar of his coat, pulled or jerked him off his horse; that he asked him, what in the hell he did it for, and he told him, to go to hell, that if he wanted anything he could get it, or words to that effect; that at this juncture, deceased (Leslie) seized a target rifle in the buggy, and was attempting to shoot him with it, and he then fired four shots at Leslie, while in the buggy; that Clyde about this time approached him, mumbling, damn something, ran his hand in his pocket and he fired two shots at him. That subsequently he reloaded his pistol, and Leslie again attempted to get the target rifle, and he shot six more shots at him. Both bodies were found some twelve or fifteen steps inside the field. Now, from this statement of the case, was appellant entitled to a charge on manslaughter? As stated, the court gave a charge on self-defense. Might not the jury, as they evidently did, disregard altogether the testimony on that phase of the case, not believing it true, and yet had they been permitted, have found appellant guilty of manslaughter? It is not necessary for us to say that they would have so found. Indeed, the evidence for the State is very strong, indicating murder, and the phase of manslaughter arises alone from appellant's testimony. The criterion is not what the judge who tried the case may have believed as to the facts presenting the phase of manslaughter, but was there sufficient evidence to have required a charge on that subject. Riojas v. State, 8 Texas Crim. App., 49; Moore v. State, 33 S. W. Rep., 980; Jones v. State, 33 Texas Crim. Rep., 492; Black v. State, 38 Texas Crim. Rep., 58. If in a murder case there be evidence which, however inconclusive tends to prove facts from which the jury may deduce a finding of manslaughter, it is incumbent on the court to give the law of manslaughter in charge to the jury. McLaughlin v. State, 10 Texas Crim. App., 340; Maria v. State, 28 Texas, 698. And for other authorities, see White Ann. Penal Code, sec. 1220. If the court be in doubt as to whether a charge upon manslaughter should be given in the particular case, the doubt should be resolved in favor of the accused, and the charge given. Halbert v. State, 3 Texas Crim. App., 656; Hill v. State, 5 Texas Crim. App., 2. Sec. 1220, supra. In the case at bar,

appellant testified that the difficulty began in an unprovoked assault made on him by his enemy, Leslie Lattimore; that he assaulted him and pulled him from his horse. There is no direct testimony that pain was inflicted, so as to bring the case under one of the statutory causes. But the suggestion seems inevitable that, under the circumstances, there must have been at least mental, if not physical pain. At any rate, whether the circumstances proven, indicate adequate cause or not under the statute, it should have been left to the jury, under appropriate instructions, to determine whether or not the assault so made was such cause as would produce passion in a person of ordinary temper. We must confess, if the facts related by appellant are true, and this was a matter for the jury to decide, to our minds the assault under the circumstances would constitute adequate cause, and the jury should have been permitted to pass upon the question of manslaughter under appropriate instructions.

Appellant also excepted to the court's charge on self-defense, claiming that the court omitted to tell the jury to judge of appellant's rights from his standpoint. In the charge on self-defense, the court did tell the jury distinctly that in judging of the reasonableness of defendant's apprehension of danger, they should view the circumstances from the standpoint occupied by appellant at the time he acted upon them; and if from his standpoint it reasonably appeared to him, from the circumstances of the case, that the danger existed, and he acted under the reasonable belief that it did exist, he would be justified in defending against it to the same extent and under the same rules although the danger did not in fact exist as if the danger had been real. This we think was sufficient, as given, in connection with the court's charge on self-defense.

For the error discussed in the failure of the court to give the charge on manslaughter, the judgment is reversed and the cause remanded.

*Reversed and remanded.*